# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LESLIE WATSON,

    Plaintiff,

v.                                                                                                 CIV 00-1276 MV/KBM

WILFRED ROMERO, Warden,
Santa Fe County Correctional Facility

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on my prior proposed findings *(Doc. 13)* and a number of motions, including Defendant's Motion For Summary Judgment *(Doc. 15)* which has been supplemented with a Preliminary *Martinez* Report *(Doc. 24).* Having considered the entire record, I recommend that summary judgment be granted in favor of Defendant and this matter dismissed with prejudice.

As set forth in my prior recommendation:

> Plaintiff is incarcerated at the Western New Mexico Correctional Facility ("WNMCF") in Grants, New Mexico. He filed this action in September 2000 alleging that while he was incarcerated in the Santa Fe County Jail ("SFCJ") in March, he was housed with a cellmate who was "yellow." Plaintiff further asserts that he was required to share "everything" with this cellmate including a razor and water. Concerned he would be exposed to "yellow jaundice," Plaintiff apparently informed an officer of his cellmate's condition. Plaintiff alleges the officer told him that he could "not get it." The officer then took Plaintiff's cellmate "to medical," but the Complaint does not indicate whether the cellmate was tested or the result of any test. At the infirmary the next day, Plaintiff avers that was told by a physician's assistant that he "could not get it."

> By August, Plaintiff was transferred to WNMCF, where he alleges he tested positive for hepatitis of the "B" and "C" varieties. *See Doc. 10.* Allegedly the doctor at WNMCF told Plaintiff that hepatitis is contracted by infected blood and that Plaintiff had been "exposed" at SFCJ. *See Complaint.* Plaintiff then brought suit against "Wilford Romero," the warden of SFCJ, for damages in the amount of $575,000.
>
> * * * * *
>
> In his "motion of joinder," Plaintiff seeks to raise a new claim for denial of medical care at WNMCF regarding treatment for "prostatitis" – inflamation of prostate. Plaintiff does not seek to add additional defendants, and Defendant Romero is in no way responsible for Plaintiff's medical treatment at WNMCF. That alone is grounds to deny the motion. Second, and more importantly, Plaintiff alleges that because of the expense, his prostate medication has been changed since his transfer to WNMCF, and that he is now receiving a "nonformulary" (apparently generic) prescription.
>
> Plaintiff believes he is entitled to the "best medical [care] that the state can and will provide;" that is, the same medication he was receiving at SFCJ. *Doc. 11.* Yet, Plaintiff merely alleges a difference of opinion concerning his medical care, which fails to state a claim. *E.g., Jennings v. Natrona County Detention Ctr. Med. Facility,* 175 F.3d 775, 781 (10th Cir. 1999). Accordingly, the motion should be denied.

*Doc. 13* at 1-3 (footnotes omitted).

After that recommendation was filed, Defendant filed a motion for summary judgment and the Court referred the matter for review by the *Pro Se* Civil Rights Selection Committee. *Doc. 21.* After the referral did not result in the appointment of counsel, the Court ordered Defendant to supplement the record with a *Martinez* Report. *Doc. 22.*

Plaintiff seeks to hold Defendant liable for damages in his personal capacity only on the basis of *respondeat superior* because Defendant "hired the . . . doctor's assistant [who] told me I could not get exposed to yellow jaundice or hepatitis of any sort," and has "a contract with" the

doctors. *Docs. 14 & 17.* It is uncontroverted, however, that Defendant Romero does not personally contract with the doctors. *See Martinez Report* at ¶ 7 & Exh. I. Even if Defendant supervised the persons who allegedly told Plaintiff he could not contract hepatitis, supervisors are not liable under § 1983 for the acts of their subordinates unless the supervisor personally participated in the alleged constitutional deprivation. *E.g., Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996).

In addition, Plaintiff asserts that he was exposed to the disease while housed in administrative segregation in March 2000. Defendant Romero was among those who periodically reviewed Plaintiff's request to be voluntarily housed in administrative segregation because he feared violence from an inmate in the general population. Yet, there is nothing in Plaintiff's administrative segregation requests or in his grievances that would have put Defendant on notice that Plaintiff had any concern about contracting a disease from his cellmates. *See Martinez Report,* ¶¶ 2-3 (and specific exhibits cited therein).

Finally, Defendant Romero is the only person named in this suit. Yet, even if Plaintiff had brought suit against the individuals who allegedly assured him he could not contract hepatitis, his claim would fail. The central alleged material fact to Plaintiff's claim is that he was *required* to share a razor and shaving water with the infected cellmate. The *Martinez* report affidavits, facility policies, and the records of Plaintiff's commissary purchases and no-charge acquisitions establish to the contrary. That evidence is uncontradicted by Plaintiff.

Not only does the prison have no policy requiring inmates to share hygiene items, the practice of inmates sharing such items is *prohibited* and conduct subject to discipline. An inmate can purchase razors at the commissary. If the inmate cannot afford to buy such hygiene items, the

commissary provides essentials (including a razor) in a free "full" indigent hygiene packet. When Plaintiff had money, he purchased razors; otherwise, he took full indigent packets. For instance, among his late February 2000 purchases was a 23¢ razor. In March 2000, Watson spent $36.13 on various and sundry items, but no razor. Because his funds had been depleted, he received a full indigent packet on April 2, 2000. *See Martinez Report,* Exhs. G-H.[1]

In response to the *Martinez* Report, Plaintiff intimates that there were no hygiene packs. *See Doc. 32.* The absence of any request or grievance by him concerning the lack of a razor in March 2000 undermines this already conclusory and unsupported assertion. Moreover, the record clearly establishes Plaintiff's routine receipt of such packs. Also, Plaintiff essentially concedes that he was not forced to share "razor water" since he now asserts that he uses water from a cup rather than sink water during shaving. *Id.* In sum, a reasonable factfinder could <u>only</u> conclude that if Plaintiff shared a razor and that was the cause of him contracting hepatitis, it was not because of a prison policy but due to his own conduct contrary to prison policy.

---

[1] He typically purchased or received a new razor about every two weeks. March 2000 represented the longest interval he went between receipt of razors (six weeks), but he had gone as long as a three weeks to a month between receipt in the past. He either bought a razor ("R") or received a full indigent packet ("FIP") as follows:

   Apr. 99 – 4/16/99 (R)
   May 99 – 5/05/99 (R)
   Jun. 99 – 6/16/99 (FIP), 6/24/99 (FIP)
   Jul. 99 – 7/01/99 (FIP), 7/15/99 (FIP), 7/29/99 (FIP)
   Aug.99 – 8/12/99 (FIP), 8/19/99 (FIP)
   Sep. 99 – 9/09/99 (R)
   Oct. 99 – 10/07/99 (R)
   Nov. 99 – 11/23/99 (R), 11/29/99 (FIP)
   Dec. 99 – 12/08/99 (FIP), 12/13/99 (FIP), 12/27/99 (2 FIP's)
   Jan. 00 – 1/17/00 (R)
   Feb. 00 – 2/03/00 (R), 2/23/00 (R)
   Apr. 00 – 4/02/00 (FIP), 4/16/00 (FIP), 4/26/00 (FIP)
   May 00 – 5/3/00 (FIP), 5/11/00 (FIP), 5/19/00 (FIP), 5/24/00 (FIP), 5/31/00 (FIP)
   Jun. 00 – 6/7/00 (FIP).

Wherefore,

**IT IS HEREBY RECOMMENDED:**

1. The prior recommendation (*Doc. 13*) be adopted;

2. Plaintiff's Motion of Joinder *(Doc. 12)* be denied as without merit;

3. Defendant's Motion For Summary Judgment *(Doc. 15)* be granted on the merits;

4. Defendant's motions for orders requiring Plaintiff's compliance with local rules *(Docs. 26, 27)* be denied as moot;

5. Plaintiff's motion for reconsideration of denial of counsel *(Doc. 23)* be denied; and

6. This action be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE